**L. M. ABSHER et al., Appellants,**

v.

**ILLINOIS CENTRAL RAILROAD COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 1, 1963.

W. Pelham McMurry, Earle T. Shoup, Paducah, for appellants.

Wheeler & Marshall, Paducah, for Illinois Cent. R. Co.

Terrell, Schultzman & Hardy, Paducah, for Illinois Cent. R. R. Hospital Dept.

PALMORE, Judge.

In 1901 the appellee Illinois Central Railroad Company (hereinafter called the Railroad) leased its hospital in Paducah to the Illinois Central Railroad Hospital Association, a corporation whose legal existence has since expired. The lease was cancelled in 1913 by an instrument which in effect substituted the appellee Illinois Central Railroad Company Hospital Department (hereinafter called the Department), an unincorporated association, as lessee of the hospital for the remainder of the term provided in the cancelled lease. We have held that this term ended on November 23, 1950, and that the Railroad had the right thereafter to dispose of the hospital property. Absher v. Illinois Central Railroad Company, Ky., 339 S.W.2d 874 (1960). This appeal concerns remaining aspects of the same case.

Appellants instituted the suit as a class action in which they purport[1] to represent employes of the Railroad residing in western Kentucky and Tennessee, southern Illinois and Indiana, and southeastern Missouri, or the "Paducah area." They claim that the Railroad and the Department have a contractual obligation to provide them "medical care, services, treatment and hospitalization," and that this obligation has

---

1. They did not secure permission of the court to sue for the class. See Clay's Kentucky Practice, CR 23.01, Note 2. However, the point was not raised in defense, nor is there any issue as to whether the rights of the individual members of the class are sufficiently identical to authorize common relief.

been breached through a reduction in services and benefits since the discontinuance of the hospital.[2] They seek a declaration of rights, KRS 418.040 et seq., to the effect that there has been such a breach and demand various consequential relief. Motions of both defendant appellees for summary judgment and a motion by the Railroad for judgment on the pleadings were sustained and the complaint dismissed. Appellants contend that there were genuine issues of material fact requiring a trial and that the judgment of dismissal was erroneous.

At the very outset it is apparent that the interlocutory order of the trial court overruling the Department's motion to dismiss on the ground that it is not a suable entity was in error. See Clay's Kentucky Practice, CR 4.04(4), Note 3; Business Realty, Inc., v. Noah's Dove Lodge #20, Ky., —— S.W.2d —— (decided Oct. 25, 1963). However, the point seems to have been abandoned on appeal, and in view of our conclusions on the merits it is unnecessary to consider whether the defect can be waived.

The Department is a nonprofit association organized in 1911 for the principal purpose of providing medical care and treatment to employes of the Railroad. Its two main sources of financial support are contributions from the employes and payments received from the Railroad for services such as those rendered to passengers and to employes injured on the job. According to the complaint, and for our purposes here it may be so assumed, the Railroad requires its employes, as a condition of their employment, to contribute to the support of the Department and submit to the latter's regulations. The contributions are collected through monthly payroll deductions at rates fixed by the Department.

Although the Department may originally have been "established" by the Railroad, and whatever may be their practical working relationship, from a legal standpoint the Department is not a creature of or subject to domination by the Railroad. The composition and government of the Department are prescribed by a constitution of rules and regulations (hereinafter called the regulations) under which its affairs are managed by a board of nine persons, of whom the Railroad's Vice President in Charge of Operation is chairman ex officio, four other designated officers of the Railroad serve ex officio, and the remaining four qualify through election by the Railroad employes. The chairman has no vote unless, in case of tie, a majority of the other board members so request. Except to the extent that the Railroad designates ex officio some of the board members and the employes elect the others, no vestige of control exists in the Railroad, the employes, or any person or group but the board itself, which alone is empowered to amend the regulations.

It is clear from the pleadings that the obligations alleged to have been breached do not arise from any written instrument other than the Department's regulations. There is no separate contract between the railroad and the Department, the Railroad and its employes, or the employes and the Department except insofar as the collection of contributions through payroll deductions raises a duty on the part of the Railroad to pay the funds so collected over to the Department and the acceptance thereof by the Department creates a duty on its part to use the funds in the manner provided in its regulations and to perform for the contributors the services those regulations say

---

2. The only remaining hospitals operated by the Department are located in Chicago and New Orleans. It continues to retain or employ a number of physicians and surgeons at Paducah, and their services are available as before, but patients requiring hospitalization must now go, except as otherwise authorized in cases of emergency, to the Chicago or New Orleans hospital. To some extent the transportation charges for this purpose are borne by the Department, as in the case of other employes of the Railroad who do not reside in the immediate vicinity of either hospital.

it will perform. The allegation of the complaint to the effect that the combined circumstances result in an obligation on the part of the Railroad to provide medical care to the contributing employes is a legal conclusion with which we do not agree. Only the Department has that duty.

There are several legal issues in this case, but only one substantial issue of fact, which is, whether the services and benefits secured to the complainants have become "so difficult to obtain as to be inaccessible and unobtainable for all practical purposes."

We concur in the apparent conclusion of the trial court that the factual issue is not material, because whichever way it might be resolved, for the reasons hereinafter set forth the judgment must be the same. Hence summary judgment was appropriate, though it should have been in the form of a declaration of rights instead of a dismissal. Cf. Hedden v. Hedden, Ky., 312 S.W.2d 891, 895 (1958); Moore v. Morris, Ky., 258 S.W.2d 908, 910 (1953). The right to a declaratory judgment, of course, does not depend on the existence of factual issues. There is in this case a very real and justiciable controversy with respect to the contractual relationship of the parties and the right of appellants to recover past contributions, to have future contributions discontinued or reduced, or to enforce better performance by the Department. For this reason paragraph IV of the complaint should not have been stricken, because in setting forth the alternative forms of relief to which appellants claimed to be entitled it served the legitimate purpose of describing the legal controversy. Nevertheless, in order to obviate further proceedings that must come to the same result we shall construe the judgment as declaring the rights of the parties in conformity with this opinion and denying consequential relief accordingly. Cf. Hedden v. Hedden, supra.

That an employer requires its employes to make certain contributions is a circumstance over which courts can have no control unless it is shown to be in violation of law or the contract of employment. The parties are free to contract as they wish. If the employe accepts employment on the condition that he will subscribe to the services of a relief organization, and without a guarantee by the employer that the relief organization will fulfill its obligations, we see no basis for a cause of action against the employer upon default of the relief organization. If the employer chooses to continue enforcement of the contributions as a condition of the employment bargain, it is up to the employe to accept or reject further employment on that basis. A court of law cannot make the terms of an employment contract. Regardless, therefore, of any failure by the Department to perform the services prescribed by its regulations, there is no breach of contract, express or implied, on the part of the Railroad, and no consequential relief the trial court could properly have allowed against it.

With respect to the Department, the regulations provide specific procedures for claims and complaints. It is the general rule that such procedures must be followed before resort may be had to the courts. 56 C.J.S. Master and Servant § 169c., p. 833. This is the settled law in Kentucky. Pennsylvania Co. v. Reager's Adm'r, 152 Ky. 824, 154 S.W. 412, 52 L.R.A.,N.S., 841, Ann. Cas.1915B, 312 (1913); Carmody v. Pennsylvania Co., 206 Ky. 219, 266 S.W. 1083 (1924).

The complaint alleges that all employes of the Railroad are required to contribute to the support of the Department and subject themselves to its regulations. As the Department itself is bound and governed by the regulations, so therefore are the appellants also bound. They do not claim to have presented their grievances, individually or collectively, to the Department in the manner provided for that purpose by its regulations. They seek to justify this failure to avail themselves of the grievance procedure on the theory that because, as

they allege, the Department has breached its own obligations under the regulations it is not in a position to require compliance by appellants, citing Dalton v. Mullins, Ky., 293 S.W.2d 470, 476 (1956). The rule referred to in that case is that if one party has substantially breached a contract the other party's subsequent nonperformance of it will not prevent recovery by the latter. 12 Am.Jur. 894 (Contracts, § 338). We do not believe the principle would apply to a contract that expressly requires claimed defaults to be submitted to a stated remedial procedure. If it did, no person with a valid and substantial complaint ever would be required to assert it within the framework of the agreement.

■ It is our conclusion that because the appellants did not exhaust the remedy provided by the regulations they are not entitled to a declaration that the Department has breached its obligations toward them.

Appellants object to the trial court's having permitted an amendment to the Department's answer after disallowing a tendered amendment of their complaint. Suffice it to say that neither the accepted nor the rejected amendment did more than present theories and conclusions of law that were fully cognizable under the pleadings as they stood before.

As herein construed, the judgment is affirmed.